By the Court, Nelson, Ch. J.
The principal ground taken at the circuit against this action, and the one upon which it is understood the cause there turned was, that the defendants were not chargeable for negligence or unskilfulness in the construction of the dam in question ; inasmuch as the water commissioners were not appointed by them, nor subject to their direction or control. In other words, the commissioners not being their agents in the construction of the dam, the rule respondeat superior could not properly be applied.
Another ground is now taken, which I will first notice, viz. that admitting the water commissioners to be the appointed agents of the defendants, still the latter are not liable, inasmuch as they were acting solely for the state in prosecuting the work in question, and therefore are not responsible for the conduct of those necessarily employed by them for that purpose. We admit, if the defendants are to be regarded as occupying this relation, and are not chargeable with any want of diligence in the selection of agents, the conclusion contended for would seem to follow. They would then be.entitled to allj the immunities of public officers charged with a duty whichj from its nature, could not be executed without availing themselves of the services of others; and the doctrine of respondeat superior does not apply to such cases. If a public officer authorize the doing of an act not within the scope of his authority, or if he be. guilty of negligence in the discharge of duties to be performed by himself, he will be held responsible; but not for the misconduct or malfeasance of such persons as he is obliged to employ. (Hall v. Smith, 2 Bing. 156 ; J. B. Moore, 226, S. C. ; Humphreys v. Mears, 1 Man. & Ryl. 187 ; Bolton v. Crowther, 4 Dowl. & Ryl. 195 ; Harris v. Baker, 4 Maule & Selw. 27.)
But this view cannot be maintained upon the facts before us¿ *539 The powers conferred by the several acts of the legislature authorizing the execution of this great work are not, strictly and legally speaking, conferred for the benefit of the public. The grant is a special, private franchise, made as well for the private emolument and' advantage of the city, as for the public-good. The state, in its sovereign character, has no interest in it. It owns no part of the work. The whole investment under the law and the revenue and profits to be derived therefrom, are a part of the private property of the city; as much so as the lands and houses belonging to it, situate within its corporate limits.
The argument of the defendants’ counsel confounds the powers in question with those belonging to the defendants in their character as a municipal or public body—such as are granted exclusively for public purposes to counties, cities, towns and villages, where the corporations have, if I may so speak, no private estate or interest in the grant. As the powers in question have been conferred upon one of these public corporations, thus blending in a measure those conferred for private advantage and emolument with those already possessed for public purposes, there is some difficulty, I admit, in separating them in the mind, and properly distinguishing the one class from the other, so as to distribute the responsibility attaching to the exercise of each. But the distinction is quite clear and well settled, and the process of separation practicable. To this end,, regard should be had, not so much to the nature and character, of the various powers conferred, as to the object and purpose, of the legislature in conferring them. If granted for public purposes exclusively, they belong to the corporate body in its public, political or municipal character. But if the grant was for purposes of private advantage and emolument, though the public may derive a common benefit therefrom, the corporation, quoad hoc, is to be regarded as a private company. It stands on the same footing as would any individual or body of persons upon whom the like special franchises had been conferred. (Dartmouth College v. Woodward, 4 Wheat. 668,672 ; *540 Philips v. Bury, 1 Ld. Raym. 8 ; 2 T. R. 352, S. C. ; Allen v. McKeen, 1 Sumner, 297 ; The People v. Morris, 13 Wend. 331, 338 ; 2 Kent’s Com. 275, 4th ed. ; U. S. Bank v. Planters’ Bank, 9 Wheat. 907 ; Clark v. Corp. of Washington, 12 id. 40 ; Moodalay v. The East India Co., 1 Brown’s C.h. R. 469.) Suppose the legislature, instead of the franchise in question, had conferred upon the defendants hanking powers, or a charter for a rail-road leading into the city, in the usual manner in which such powers are conferred upon private companies ; could it be doubted that they would hold them in the same character, and be subject to the same duties and liabilities 1 I cannot doubt but they would. These powers in the eye of"the law, would be entirely distinct and separate from those appertaining to the defendants as a municipal body. So far as related to the charter thus conferred, they would be regarded as a private company and be subject to the responsibilities attaching -to that class of institutions. The distinction is well stated by the master of the rolls in Moodalay v. The East India Company, (1 Brown’s Ch. R. 469,) in answer to an objection made by counsel. There the plaintiff had taken a lease from the company, granting him permission to supply the inhabitants of Madras with tobacco for ten years. Before the expiration of that period, the company dispossessed him, and granted the privilege to another. The plaintiff, preparatory to bringing an action against the company, filed a bill of discovery. One of the objections taken by the defendants was, that the removal of the plaintiff was incident to their character as a sovereign power, the exercise of which could not be questioned in a bill or suit at law. The master of the rolls admitted that no suit would lie against a sovereign power for any thing done in that capacity ; but he denied that the defendants came within the rule. u They have rights,” he observed, u as a sovereign power, they have also duties as individuals; if they enter into bonds in India, the sums secured may be recovered here. So in this case, as a private company they have entered into a private contract, to which they must be liable.” It is upon the *541 like distinction that municipal corporations, in their private character as owners and occupiers of lands and houses, are regarded in the same light as individual owners and occupiers, and dealt with accordingly. As such, they are hound to repair bridges, highways and churches 3 are liable to poor rates ; and, in a word, to the discharge of any other duty or obligation to which an individual owner would be subject. (2 Inst. 703 ; Thursfield v. Jones, Sir T. Jones, 187 ; Rex v. Gardner, Cowp. 79 ; Mayor of Lynn v. Turner, id. 87 ; Henly v. Mayor of Lyme, 5 Bing. R. 91 ; 1 Bing. N. C. 222, S. C. in the House of Lords.)
Regarding the defendants then in the light of any other private company upon whom the like special franchises had been conferred, the next question is, whether the water commissioners charged with the immediate superintendence and execution of the work stand in the relation of agents deputed by the defendants to perform this duty. If they do, it is not denied, in this aspect of the case, that the defendants are answerable to the plaintiffs for any damages sustained through the negligence or unskilfulness of the commissioners. The question depends mainly upon a construction of the act of 1834, (Sess. Laws of 1834, p. 451,) as the several other statutes relating to this work have no material bearing upon the point. By this act, the water commissioners are to be appointed by the governor and senate. (§ 1.) It is made their duty to examine and consider all matters relative to supplying the city with a sufficient quantity of pure and wholesome water; (§ 2 ;) for which purpose they are empowered to employ engineers, surveyors, and such other persons as may be necessary &c. (§ 3.) They are also required to adopt such plan as in their Judgment may be most advantageous for procuring a supply of water, and to ascertain as nearly as practicable what amount of money it will cost to carry the plan into effect 3 and for this purpose, they are empowered to make conditional contracts, (subject to the ratification of the common council of the city,) with the owners of lands &c. required for the work 3 the con-» *542 tracts to be binding upon the owners, if ratified by the common council within two years from the passage of the act. (§ 4.) The commissioners are further required to make a full report of their proceedings, containing a detailed description of their plan and estimate of expenses, together with an estimate of the probable amount of revenue to accrue to the city upon the completion of the work ; with the reasons and calculations upon which their opinions and estimates are founded, and all such other information as may be connected with the object of their appointment. 5.) In case the plan adopted by the commissioners shall be approved by the common council, they shall then refer the question to the electors at the next charter election, to determine whether they will authorize the common council to enter upon the work and raise the necessary funds to carry on the same; (§ 7 ;) and if a majority of the electors are found in favor of the measure, “ it shall then be lawful for the common council to instruct the commissioners to proceed in the work “ to raise by loan from time to time and in such amounts as they (the common council) may think fity a sum not exceeding $2,500,000,” &c. (§ 8.) It is provided also that-the common council shall authorize the commissioners to draw upon the comptroller of the city for any sum to be paid to contractors and to owners of lands, waters, streams or other property necessary for the execution of the work, as well as for their own incidental expenses. 24.) In pursuance of this act, the commissioners, in July, 1835, made a detailed report of the plan they proposed as most advantageous and practicable, together with full estimates of the expense and of the probable amount of revenue. The report was approved by the common council in March following, and subsequently ratified by the electors. The commissioners were then instruct ed to proceed in the execution of the work, which has accordingly been done, and the dam in controversy is a portion of it, built under their superintendence and control. It is therefore insisted that the commissioners are to be regarded as the agents of the. defendants while engaged in the work.
*543 The ground taken against this conclusion is, that these commissioners were appointed by the state, and that the defendants have had no direction or control over their conduct; that they were bound to employ them, and submit to the independent exercise of their powers under the law 5 that the commissioners were officers of the state, engaged in the discharge of public duties 3 that they were answerable for their official conduct to the state alone, who could remove them at pleasure; that the defendants were but trustees of the work, which was authorized and executed for the benefit of the public, and owned and held it in their municipal character, and not as private owners for their own benefit,
We have already given our views of the character of this work, and of the capacity in which the defendants hold the powers under which it has been executed. If we are not mistaken in that conclusion, and they are to be regarded as a private company, like any other body of men upon whom special franchises have been conferred for their own private advantage—such as banking and rail-road corporations—then the appointment of the agents by the state did not make them less the agents of the defendants. The appointment in this way is but one of the conditions upon which the charter was granted3 and stands on the footing of any other condition to be found in | the grant, subject to which it has been accepted. By accepting 1 the charter, the defendants thereby adopted the commissioners ‘! as their own agents to carry on the work. The acceptance was entirely voluntary; for the state could not enforce the grant upon the defendants against their will. This would be so upon general principles 3 (Angel § Ames on Corf. 46— 50, and cases there cited;) but here, the charter itself left it op tional with the common council of the city to accept or not. (§ 7,) The undertaking of the work was made to depend upon the approval of the plan of the commissioners, which necessarily involved the right to adopt or reject the work itself altogether, if they disliked the system prescribed by the legislature. The approval having taken place, this* together with the subsequent *544 measures of the common council instructing the commissioners to proceed in the execution of the work, • constituted them the agents of the defendants ; as effectually so as if the latter had originally appointed them. The act of adoption in the one case was as free and voluntary as the appointment in the other.
It is also insisted that, assuming the defendants are liable and bound to make compensation for the damages sustained by the plaintiffs, the statute has provided a remedy by appraisement, to which alone they must resort, as the common law remedy is thereby superseded.
The act (Sess. Laws of 1834, p. 453, § 12,) provides that the commissioners may enter upon any land or water for the purpose of making surveys, and may agree with the owners of any property which may be required for the purposes of the act, as to the amount of compensation &c. In cases of disagreement between the commissioners and the owner of any property which may be required for said purposes, or affected by any operation connected therewith, as to the amount of compensation &c., the vice chancellor of the first circuit may, upon the application of either party, appoint three indifferent persons to examine such property, and to estimate the value thereof, or damage sustained thereby, See. (§ 13.) It is quite apparent, from a perusal of these provisions, that they apply, and were intended to apply, only to cases where property was necessarily taken and appropriated, or its use and value necessarily impaired, in the course of the execution of the work ; not to damages occasioned beyond this, through the mere carelessness and unskilfulness of the defendants or their agents.
New trial granted.